IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**NICOLE M. STUBER,**                 Case No. 1:17 CV 1501

    Plaintiff,

    v.                               Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.               MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Plaintiff Nicole M. Stuber ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Docs. 17, 18). For the reasons stated below, the undersigned affirms the decision of the Commissioner.

## PROCEDURAL BACKGROUND

Plaintiff filed for DIB in December 2014, alleging a disability onset date of May 25, 2005. (Tr. 443). Her date last insured for DIB was December 31, 2012. *See* Tr. 450. Her claims were denied initially and upon reconsideration. (Tr. 403, 409). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 412). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on May 9, 2016. (Tr. 344-80). On June 3, 2016, the ALJ found Plaintiff not disabled in a written decision. (Tr. 11-24). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner.

(Tr. 1-7); *see* 20 C.F.R. §§ 404.955, 404.981. Plaintiff timely filed the instant action on July 17, 2017. (Doc. 1).

**FACTUAL BACKGROUND**

Personal Background and Testimony

Plaintiff was born in 1984, making her 28 years old on her date last insured. *See* Tr. 443. She alleged disability based on multiple sclerosis ("MS"), back pain, nerve damage, arthritis, gastritis, and ankle instability. (Tr. 486). She had four years of college education and past work as a merchandiser, marketing analyst, internet specialist, and accounts payable. (Tr. 487).

Plaintiff lived with her husband and two-year-old daughter. (Tr. 350). She had a driver's license but did not drive due to numbness and tingling in her feet. (Tr. 351). Plaintiff believed she could no work due to lack of physical strength and memory problems. (Tr. 354). She was fatigued, could not lift anything, and was in pain all the time. *Id.* Plaintiff cared for her two year old with help from her mother and a friend a few times per week. (Tr. 354-55). Her husband also used FMLA leave to help care for their daughter. (Tr. 355). Plaintiff did not cook because she could not tell the difference between hot and cold, and would burn herself. *Id.* Her husband did all the household chores. (Tr. 357, 367-68).

Plaintiff estimated she could stand comfortably for about two minutes, but sometimes her legs would give out. (Tr. 357). Sitting caused pain in her legs and back. *Id.* She was able to walk up approximately seven stairs without stopping. (Tr. 358). Plaintiff also had daily headaches, which she treated with sleep and Tylenol. (Tr. 359). She spent her days primarily on the couch, but was in constant pain. (Tr. 366). Her pain was a constant eight out of ten. *Id.*

Plaintiff was treated for right arm and hand pain starting in 2006, and again the previous summer (2015). (Tr. 359-60). Plaintiff also testified to vision problems beginning in 2005, and then more recently in February 2016. (Tr. 360).

Plaintiff testified to taking ten to fifteen trips to the bathroom each day. (Tr. 358). While she was working, there were days she could not make it to the bathroom. (Tr. 358-59). She testified she was taking Metamucil and a gastroenterologist told her the inflammatory bowel disease was just part of MS and there was nothing else they could do. (Tr. 363).

Plaintiff testified that her MS worsened since 2005. (Tr. 356). She testified that her condition plateaued at times, and then would relapse. (Tr. 362). She tried three different medications, but had relapses on each. (Tr. 364).

Relevant Medical Evidence

In January 2010, Plaintiff called requesting an Amitriptyline refill from the Cleveland Clinic. (Tr. 621).

In January 2011, Plaintiff called requesting a refill of Copaxone injections. (Tr. 620). The physician noted Plaintiff had not been seen since July 2009, so a three month refill would be provided, and Plaintiff needed to schedule a follow-up visit. *Id.*

In March 2012, Plaintiff again called requesting a refill of Copaxone. (Tr. 619). Office staff noted Plaintiff had not been seen since 2009 due to insurance issues. (Tr. 618). She was provided a three month refill, but it was noted Plaintiff was accidentally provided a year's worth of medication by the pharmacy. (Tr. 619). She was provided a one month supply and no refills. *Id.*

In May 2012, Plaintiff saw Irene Druzina, M.D., at the Cleveland Clinic. (Tr. 617-18). Dr. Druzina noted Plaintiff's MS symptoms were stable on Copaxone, she had no obvious neurological deficits, and her gait was "fine". (Tr. 618). Plaintiff's primary encounter diagnosis was an ingrown

toenail, and Dr. Druzina provided a brief refill of Copaxone to avoid interruption in treatment. (Tr. 618). She referred Plaintiff to neurology for further care. *Id.*

Later that month, Plaintiff saw Mary Willis, M.D., at the Cleveland Clinic for an evaluation regarding her MS. (Tr. 613-16). Plaintiff reported a diagnosis of MS in May 2005, with symptoms starting in 2003. (Tr. 613-14). She had numbness in both legs at the time of diagnosis, which resolved with IV steroids. (Tr. 614). Plaintiff reported a few other courses of steroid treatment, "but could not recall any further relapses." *Id.* Plaintiff had taken Copaxone since 2005. *Id.* Plaintiff reported no missed doses, despite a long lapse in follow-up appointments due to insurance issues. *Id.* She reported symptoms of loose stools and bowel urgency, urinary frequency, intermittent numbness in the left hand and both legs, occasional "MS hug" sensation, back and neck pain, electric shock sensation with sneezing, legs giving out, and difficulty sleeping. *Id.* On examination, Plaintiff had normal motor tone and muscle power, normal coordination, and normal sensation except slightly diminished vibration in the left foot. (Tr. 615). Her gait was normal. *Id.* Dr. Willis assessed clinically stable relapsing remitting MS. *Id.* Dr. Willis referred Plaintiff for updated brain imaging, continued Copaxone, and started Plaintiff on Neurontin for paresthesias and achy pain. *Id.*

Plaintiff had a brain MRI in May 2012. (Tr. 684-88); *see also* Tr. 612. (Tr. 612); *see also* Tr. 684-88. In June, Dr. Willis discussed the results with Plaintiff, noting there was little change in the MRI brain findings since the previous study. (Tr. 612). Plaintiff did have a progression of lesion burden in the cervical cord since 2007. *Id.* Plaintiff wanted to switch to an oral therapy at some point, which Dr. Willis noted was reasonable, but not imperative. *Id.* Dr. Willis continued Copaxone, increased Neurontin, and instructed Plaintiff to take Vitamins D and B12. *Id.* She also

noted Plaintiff's celiac disease panel was negative, but that did not entirely exclude celiac disease. *Id.* She offered Plaintiff a referral to a gastroenterologist. *Id.*

In June 2012, Plaintiff called reporting diarrhea every other day and urgency of bowel movements, which limited her ability to leave the house. (Tr. 611). She reported these symptoms had persisted for three months. *Id.* The provider noted Plaintiff had a previous colonoscopy in 2009 with normal results. *Id.* Plaintiff was referred to a gastrointestinal specialist and instructed to start a food diary. *Id.*

In July 2012, Plaintiff saw nurse practitioner Damon Boogaart for a "well check up". (Tr. 601). She was noted to be "generally well and ha[d] no other complaints today." *Id.* On examination, she had intact muscular strength, a normal gait, and negative neurological findings (including normal sensation). (Tr. 602-03). She was noted to be "[n]egative for abdominal discomfort, blood in stools or black stools and change in bowel habit." (Tr. 602). Plaintiff was found to be deficient in vitamins D and B12. (Tr. 603). She also discussed trying a gluten free diet. *Id.*

Plaintiff had a colonoscopy in July 2012 due to diarrhea. (Tr. 600-01). The following month, Plaintiff saw Marianne Sumego, M.D. to review her colonoscopy results. (Tr. 599). Dr. Sumego noted Plaintiff had internal hemorrhoids. *Id.* Plaintiff reported neck pain and muscle spasms with her MS, but these were "not new". *Id.* Dr. Sumego noted the cause of Plaintiff's diarrhea was not clear, but instructed Plaintiff to avoid lactose. (Tr. 600).

In August 2012, Plaintiff called requesting information about pregnancy and MS. (Tr. 597). A nurse practitioner answered her questions and sent her information. *Id.*

In October 2012, Plaintiff called and spoke with a nurse reporting diarrhea once a week, often after dairy products. (Tr. 596). She also reported some stomach pain and cramping prior to

passing loose stools. *Id.* Dr. Sumego stated this "sounds like IBS", but if she had continued concerns, to return to a gastroenterologist. *Id.*

Plaintiff saw Christine Lee, M.D., for a consultation in November 2012 regarding diarrhea. (Tr. 593-96). Plaintiff reported three to four soft, formed bowel movements per day, with no blood. (Tr. 593). She also reported a loss of control of bowel movements. (Tr. 595). She reported these symptoms had been present for many years. *Id.* She denied nausea, vomiting, loss of appetite, or abdominal pain. (Tr. 594). Dr. Lee noted Plaintiff's colonoscopy was negative for colitis, and that "given her lack of classic alarm features", it was "very likely IBS-C with overflow diarrhea". (Tr. 595). Dr. Lee noted Plaintiff preferred to proceed with a conservative approach. *Id.* Her plan included Metamucil, Colace, and a return if symptoms failed to improve or worsened. *Id.*

In December 2012, Plaintiff called and spoke with a nurse about a cold. (Tr. 592).[1]

*Opinion Evidence*

State agency physicians Gerald Klyop, M.D., and Elizabeth Das, M.D., reviewed Plaintiff's records in January and March 2015, respectively. (Tr. 385-86, 395-96). Both concluded Plaintiff

---

.1 As the ALJ acknowledged (and thoroughly summarized), there are additional records which post-date Plaintiff's date last insured of December 31, 2012. *See* Tr. 18-19; Tr. 530-91, 693-797. The undersigned does not summarize such evidence here. "Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin.,* 88 Fed. Appx. 841, 845 (6th Cir .2004). In fact, record medical evidence from after a claimant's date last insured is only relevant to a disability determination where the evidence "relates back" to the claimant's limitations prior to the date last insured. *See Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir.1988) (noting that evidence of a medical condition diagnosed after the date last insured was only "minimally probative" of claimant's condition during the insured period). Moreover, evidence of a claimant's post-date last insured condition, to the extent that it relates back, is relevant only if it is reflective of a claimant's limitations prior to the date last insured, rather than merely his impairments or condition prior to this date. *See* 20 C.F.R. § 416.945(a)(1) ("Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is the most you can still do despite your limitations."); *see also Higgs,* 880 F.2d at 863 ("The mere diagnosis ..., of course, says nothing about the severity of the condition.").

6

was capable of medium exertional capacity work with postural restrictions to avoid ladders, ropes, and scaffolds (due to MS symptoms). *See id.* Dr. Das also noted there was insufficient evidence in the file from Plaintiff's alleged onset date through April 30, 2012. (Tr. 396).

VE Testimony

A VE appeared and testified at the hearing before the ALJ. (Tr. 369-81). The VE testified that a hypothetical individual of Plaintiff's age, education, past relevant work and RFC as ultimately determined by the ALJ could perform past work as a survey compiler, as well as other jobs existing in significant numbers in the national economy. (Tr. 371-73).

ALJ Decision

In a written decision dated June 3, 2016, the ALJ found Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2012. (Tr. 13). Plaintiff had engaged in substantial gainful activity in 2007, but had not engaged in substantial gainful activity since 2008. (Tr. 13-14). Plaintiff had severe impairments of relapsing remitting multiple sclerosis, obesity, and inflammatory bowel disease, but these impairments did not meet or medically equal the severity of a listed impairment either individually or in combination. (Tr. 14). The ALJ then concluded Plaintiff had the residual functional capacity:

> to perform light work as defined in 20 CFR 404.1567(b), except [she] could never climb ladders, ropes, or scaffolds and could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. [She] could never be exposed to unprotected heights, moving mechanical parts, or operate a motor vehicle. [She] could engage in frequent left and right foot controls.

(Tr. 15). Given this RFC, the ALJ found Plaintiff was capable of performing her past relevant work as a survey compiler, and was also capable of performing other jobs existing in the national economy. (Tr. 22). Therefore, he concluded Plaintiff was not disabled from her alleged onset date of May 25, 2005 through her date last insured, December 31, 2012. (Tr. 24).

7

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff argues the ALJ's decision is not supported by substantial evidence because the ALJ failed to 1) properly account for the limitations resulting from irritable bowel syndrome; and 2) consider the frequency and duration of her MS exacerbations and symptoms. The Commissioner responds that the ALJ's RFC determination is supported by substantial evidence in both regards, and should be affirmed. For the reasons stated below, the undersigned affirms the ALJ's decision.

A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545. The RFC "is meant 'to describe the claimant's residual abilities or what the claimant can do, not what maladies a claimant suffers from—though the maladies will certainly

9

inform the ALJ's conclusion about the claimant's abilities." *Stankoski v. Astrue*, 532 F. App'x 614, 619 (6th Cir. 2013) (quoting *Howard v. Comm'r of Soc. Sec.*, 276 F. 3d 235, 240 (6th Cir. 2002)). In the RFC analysis, an ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence, § 404.1529, and consider and weigh medical opinions, § 404.1527. When a claimant's statements about symptoms are not substantiated by objective medical evidence, the ALJ must make a finding regarding the credibility of the statements based on a consideration of the entire record. Social Security Ruling (SSR) 96–7p, 1996 WL 374186, *1. An ALJ is only required to include those limitations in the RFC that he finds consistent with the record as a whole. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155-56 (6th Cir. 2009).

Although an RFC determination must be supported by evidence of record, it need not correspond to, or even be based on, any specific medical opinion. *See Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015). Instead, it is the ALJ's duty to formulate a claimant's RFC based on all the relevant, credible evidence of record, medical and otherwise. *See Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 587 (6th Cir. 2013); *see also Poe*, 342 F. App'x at 157 ("The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician."). "Moreover, an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe*, 342 F. App'x at 157.

Bowel Problems

Plaintiff first contends the RFC should have included limitations regarding bathroom breaks. She contends the "[c]ourts in this Circuit have found that the ALJ errs by failing to address a Plaintiff's need for bathroom breaks, and whether the need for bathroom breaks precludes

competitive work." (Doc. 14, at 13) (citing cases). Specifically, Plaintiff also contends it was inconsistent to find Plaintiff had a severe impairment of inflammatory bowel disease, and yet find no functional limitations as a result. *Id.* (citing *Huffman v. Astrue*, 2008 WL 3914928, at *6 (E.D. Ky.). The Commissioner responds that the ALJ appropriately considered Plaintiff's bowel disease and diarrhea and the decision not to find further limitations was supported by substantial evidence.

The ALJ appropriately reviewed the evidence of record related to Plaintiff's digestive problems. *See* Tr. 16-18 (citing testimony, treatment with Dr. Willis, colonoscopy, and treatment with Dr. Sumego and Dr. Lee). This evidence showed that in May 2012, Plaintiff reported loose stools and bowel urgency. (Tr. 614). In June 2012, she reported diarrhea every other day and bowel movement urgency. (Tr. 611). However, at a well check in July 2012, Plaintiff was "negative" for a "change in bowel habit." (Tr. 602). The next month, Plaintiff reviewed her colonoscopy results, which showed internal hemorrhoids, but no clear cause of diarrhea. (Tr. 599-600). Dr. Sumego instructed Plaintiff to avoid lactose. (Tr. 600). In October 2012, Plaintiff reported diarrhea once per week, more commonly after dairy products. (Tr. 596). In November 2012, she reported three to four soft bowel movements per day, and a loss of control of bowel movements. (Tr. 593-95). Dr. Lee instructed Plaintiff to use Metamucil. (Tr. 595).

Based on this evidence, the undersigned finds no error in the ALJ's failure to incorporate additional limitations—including bathroom breaks—in the RFC. The cases cited by Plaintiff are distinguishable in that they involved greater, and more severe, evidence of a need for bathroom breaks. In *Pelphrey v. Commissioner of Social Security*, contrary to the ALJ's statement, the plaintiff had presented objective evidence of conditions that would cause diarrhea and frequent infections, and were consistent with Plaintiff's statements that he had six to eight bowel movements per day, after which he soaked in a bath to avoid infection . 2015 WL 7273110, at *4-

11

5 (S.D. Ohio). In *Williams-Lester v. Social Security Administration*, the plaintiff presented evidence of urinary incontinence, including a prescription for adult diapers from her treating urologist, to support her testimony that she went to the bathroom fifteen to twenty times per day and had several accidents. 2016 WL 4442797, at *29-30 (M.D. Tenn.). And, in the third case cited by Plaintiff, *Huffman v. Astrue*, the plaintiff had presented evidence from a treating physician that due to his diarrhea, he would need "liberal bathroom privileges" to return to work, and had tried eliminating things from his diet and various medications without success. 2008 WL 3914928, at *5-6. By contrast, the evidence here was much less extreme, and there was no opinion evidence on the issue.

Finally, Plaintiff contends it is inconsistent for the ALJ to have found she suffered from a "severe" impairment of inflammatory bowel disease, and yet include no restrictions regarding that impairment in the RFC. The Sixth Circuit has rejected such an argument. *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) ("'A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other.'") (quoting *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, at *5 (E.D. Mich.)); *see also Little v. Comm'r of Soc. Sec.*, 2015 WL 5000253, at *15 (S.D. Ohio) ("The ALJ was not obligated, however, to include any additional limitations that specifically addressed Plaintiff's IBS simply because he determined that her IBS was a severe condition at step two.").

To the extent Plaintiff relies upon her own testimony to support the need for bathroom breaks (or an analysis of such), the Commissioner correctly points out that Plaintiff's testimony about needing to use the bathroom ten to fifteen times per day came *after* Plaintiff's date last insured. *See* Tr. 358. And, although Plaintiff also testified that when she was working, she had times when she could not make it to the bathroom (Tr. 358-59), this was not supported by the

12

medical evidence in the record. Further, the ALJ noted that although Plaintiff "alleged numerous complaints in support of her application for disability", "when considering the claimant's testimony in light of the limited treatment record and the mainly mild examination findings prior to the date last insured, the claimant's impairments were not as debilitating as she has alleged." (Tr. 21).[2] This conclusion is supported by substantial evidence, *see, e.g.,* Tr. 595-96 (prescribing over-the-counter Metamucil as treatment), and is a valid consideration, *see* SSR 16-3p, 2017 WL 518034, at *9 (if the "frequency or extent of treatment sought by an individual is not comparable with the degree of the individual's subjective complaints", an ALJ "may find the alleged intensity or persistence of an individual's symptoms are inconsistent with the overall evidence of record.").

Ultimately, it is Plaintiff's duty to produce evidence to establish disability. *See, e.g., Watters v. Comm'r of Soc. Sec. Admin.*, 530 F. App'x 419, 425 (6th Cir. 2013) ("[T]his court has consistently affirmed that the claimant bears the burden of producing sufficient evidence to show the existence of a disability.") (citations omitted). The evidence here did not establish the need for further restrictions in the RFC due to Plaintiff's bowel problems, and the ALJ therefore did not err in failing to include further restrictions.

MS Exacerbations

Plaintiff also contends the ALJ erred in failing to consider the frequency and duration of her MS exacerbations. Within this argument, she contends the ALJ failed to fulfill his obligation to fully develop the record. The Commissioner responds that the ALJ appropriately considered the evidence pre-dating Plaintiff's date last insured and the RFC determination is supported by substantial evidence.

---

2. The ALJ also found "there is no basis for finding that the claimant has suffered debilitating symptoms that would further reduce the residual functional capacity described above at any time through the date last insured." (Tr. 22).

The ALJ addressed Plaintiff's MS symptoms, noting he found her testimony not fully consistent with the record prior to her date last insured:

> Despite the claimant's testimonial allegations of worsening MS symptoms since 2005, with current inability to lift even a gallon of milk, examinations conducted prior to the date last insured revealed full upper extremity strength and intact arm coordination. (Exhibit 1F/87-90, 75-83, 73-74). . . . As for the claimant's reports that she can sit only 5 minutes and stand or walk only 2 minutes, the record lacks sufficient objective evidence to support these restrictions prior to the date last insured. More specifically, examinations conducted before December 2012 revealed slightly diminished left foot vibration sensation, but otherwise normal sensation, intact strength, normal spinal range of motion, intact leg coordination, and a consistently normal gait with independent ambulation. (*Id.*).

(Tr. 20). This is supported by the record. In May 2012, Dr. Willis noted Plaintiff had normal motor tone, full muscle power in all upper and lower extremity muscles tested, and intact coordination in the arms and legs "including point-to-point, rapid-alternating, and fine movements." (Tr. 615). Dr. Willis also noted normal sensation except slightly diminished left foot vibration sensation. *Id.* In July 2012, Plaintiff again had intact muscular strength, normal spine range of motion, normal gait, and normal reflexes. (Tr. 603).

Further, during the relevant time period, Plaintiff's physicians repeatedly noted Plaintiff's MS was stable on medication. *See* Tr. 617-18 (May 2012 notation that Plaintiff's MS symptoms were stable on Copaxone and she had "no new/exacerbated MS symptoms"); Tr. 613 (May 2012 notation that Plaintiff was clinically stable; and had reported a few other courses of steroid treatment from May 2005 to May 2012, "but could not recall any further relapses"); Tr. 612 (June 2012 note continuing Plaintiff's medications, and noting that switching to a different medication was "reasonable, but it is not imperative"); Tr. 601-03 (July 2012 well check-up noting Plaintiff was "generally well and had no other complaints", with intact muscular strength, normal gait, and negative neurological findings); Tr. 599 (August 2012 note that Plaintiff's MS was "stable"). None of these physicians noted specific functional limitations Plaintiff experienced due to MS

14

symptoms. Nor do their records reflect Plaintiff made significant complaints about functional limitations resulting from her MS. Thus, Plaintiff's argument that the ALJ failed to consider "inevitable periods of relapse" (Doc. 14, at 16) is not well-taken, as there is no evidence of such periods of relapse in the record during the relevant time period.

Although Plaintiff points to exacerbations and worsening that occurred *after* her date last insured, *see* Doc. 14, at 16, the relevant time period for Plaintiff's DIB application ends on her date last insured, December 31, 2012. As noted above, the objective medical findings from prior to this date are relatively benign.

Finally, Plaintiff argues the ALJ failed in his duty to develop the record. Specifically, she contends the ALJ assigned only partial weight to the only medical opinions in the file, and then "took it upon himself to interpret the extent to which relapsing-remitting multiple sclerosis would reduce one's functional capacity." (Doc. 14, at 15). Preliminarily, the undersigned notes (as the Commissioner points out), that it is Plaintiff's burden to establish disability. *See, e.g., Watters*, 530 F. App'x at 425 ("[T]his court has consistently affirmed that the claimant bears the burden of producing sufficient evidence to show the existence of a disability.") (citations omitted). Although the record supports Plaintiff's allegations that insurance problems prevented treatment for some period of time (Tr. 614, 618), "there is no evidence that [she] ever sought treatment offered to indigents or was denied medical treatment due to an inability to pay", *Moore v. Comm'r of Soc. Sec.*, 2015 WL 1931425, at *3 (W.D. Tenn.) (citing *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) ("However, there is no evidence Goff was ever denied medical treatment due to financial reasons.")). And, as stated above, the responsibility for determining an RFC rests with the ALJ, not an individual physician. *Poe*, 342 F. App'x at 157. Further, when Plaintiff did re-establish

15

treatment in 2012, Plaintiff was clinically stable, had undergone a few courses of steroid treatment, "but could not recall any further relapses." (Tr. 613).

Although an ALJ has a duty to develop the record, *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983), that duty is balanced with the fact that "[t]he burden of providing a complete record, defined as evidence complete and detailed enough to enable the [Commissioner] to make a disability determination, rests with the claimant", *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (explaining claimant's burden to prove disability). Further, the ALJ has discretion to determine whether the record is sufficient to make a disability determination. *See* 20 C.F.R. § 404.1527(c)(2) ("If any of the evidence in [Plaintiff's] case record is inconsistent, we will weigh all of the evidence and see whether we can decide whether [Plaintiff is] disabled based on the evidence we have."). The determination of whether the ALJ has satisfied the duty to develop the record is not a bright line rule, but one that must instead be made on a case-by-case basis. *Lashley*, 708 F.3d at 1052; *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 262 (6th Cir. 2015).

Given the relatively benign findings during the time period prior to Plaintiff's date last insured, and lack of further evidence in the medical record to support Plaintiff's allegations that she was more limited by her MS, the undersigned finds the ALJ's decision that Plaintiff could perform the physical requirements of light work (with postural restrictions) supported by substantial evidence.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB supported by substantial evidence and affirms that decision.

                                                  s/James R. Knepp II
                                                  United States Magistrate Judge